IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL ELLIOT,

    Plaintiff,

      v.

BISON PLUMBING, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-00826-TWT

**OPINION AND ORDER**

This is an employment dispute case. It is before the Court on Defendants Bison Plumbing, Inc. ("Bison"), Bison Plumbing Services, Inc. ("Bison Services"), Michael Tadlock, and Michael Edwards's Motion to Dismiss the Initial Complaint [Doc. 10] and Motion to Dismiss the Amended Complaint [Doc. 13]. For the reasons set forth below, the Defendants' Motion to Dismiss the Initial Complaint [Doc. 10] is DENIED as moot, and the Defendants' Motion to Dismiss the Amended Complaint [Doc. 13] is GRANTED as to Counts I and II in their entirety and GRANTED as to Counts II and IV for Defendants Bison, Tadlock, and Edwards. The Court declines to exercise supplemental jurisdiction as to the remaining counts (Counts II and IV) against Defendant Bison Services and dismisses those claims without prejudice.

## I. Background[1]

This case arises from an employment dispute regarding Plaintiff Michael Elliott's allegations that his employer misclassified him as a contractor rather than an employee and failed to pay him proper wages. In his Amended Complaint, Elliott states that he was employed as a plumber by Defendants Bison and Bison Services between 2019 and 2021. (Am. Compl. ¶ 22). Defendants Michael Tadlock and Michael Edwards—the CEOs of each company, respectively—"had the authority to hire and fire Plaintiff," determine and modify his terms of employment, and dictate the amount and manner of compensation. (*Id.* ¶¶ 23–26).

At the start of Elliott's employment in 2019, the Defendants informed Elliott that he would receive gross wages of $1,200 per week, subject to tax withholding. (*Id.* ¶ 29). In 2020, Elliott received a W-2 for his 2019 earnings. (*Id.* ¶ 29). The Defendants also informed Elliott that his gross wages would increase to $1,600 per week, and they again informed Elliott that he would "continue to be employed as an employee" in 2020 with earnings subject to tax withholding. (*Id.* ¶ 30). Elliott subsequently received a weekly paycheck of $1,010 per week and was informed by Tadlock that the check reflected his tax withholdings. (*Id.* ¶ 31). At the beginning of 2021, however, Tadlock informed

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the Motion to Dismiss the Amended Complaint. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Elliott that Bison and Bison Services had failed to properly withhold payroll taxes from his 2020 paychecks and had failed to pay payroll taxes to the Georgia Department of Labor and Internal Revenue Service. (*Id.* ¶¶ 33, 45). Shortly thereafter, Tadlock and Edwards provided Elliott with a Form 1099 for his services as an independent contractor in 2020, rather than a W-2 for his services as an employee. (*Id.* ¶¶ 34, 48). Elliott resigned "[u]pon receiving the Form 1099." (*Id.* ¶ 37). He asserts that the Defendants intentionally and maliciously misclassified him as a 1099 contractor rather than a W-2 employee to avoid paying payroll taxes and shift the tax responsibility to Elliott. (*Id.* ¶¶ 36, 49). Elliott further states that, because the Defendants did not pay the taxes supposedly withheld in 2020 to the relevant authorities, he "incurred damages, including having to pay the principal taxes owed, and potential penalties and interest." (*Id.* ¶ 35). Additionally, Elliott states that he "routinely" worked more than forty hours per week in 2020 and 2021, yet Bison and Bison Services "willfully failed to pay [Elliott] required overtime wages." (*Id.* ¶ 39).

According to Count I of the Amended Complaint, the Defendants violated the Fair Labor Standards Act ("FLSA") by misclassifying him as a contractor rather than an employee in 2020 and failing to pay overtime wages in 2020 and 2021. (*Id.* ¶¶ 41–52, 39). In Count II, Elliott alleges that the Defendants breached his employment contract for failure to pay the agreed

upon gross earnings of $1,600 per week and the overtime wages. (*Id.* ¶¶ 53–56). In Counts III and IV, Elliott seeks punitive damages, (*id.* ¶ 59), and attorney's fees and costs, (*id.* ¶ 62), respectively.

In March 2024, the Defendants collectively moved for partial dismissal of Elliott's Initial Complaint [Doc. 10], which was filed on February 23, 2024. Elliott subsequently filed an Amended Complaint [Doc. 12] on April 4, 2024. The Defendants now move for partial dismissal of the Amended Complaint, seeking dismissal of Counts I and III as to all Defendants and dismissal of all counts as to Bison, Edwards, and Tadlock. (Br. in Supp. of Defs.' Mot. to Dismiss, at 14, 2 [Doc. 13-1]). Should the Court dismiss Count I regarding the alleged FLSA violations, the Defendants also request that the case be remanded to state court. (*Id.* at 14).

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in

the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

As an initial matter, because Elliott's Amended Complaint is now the operative complaint, the Defendants' Motion to Dismiss the Initial Complaint [Doc. 10] is moot. The Court considers only the Defendants' Motion to Dismiss the Amended Complaint [Doc. 13].

### A. FLSA Claim (Count I)

#### 1. Cause of Action

Congress enacted the FLSA to "outlaw[ ] from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 296 (1985) (citing *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516 (1950)). Under the FLSA,

employees are entitled to minimum wage and overtime protections from qualifying employers. 29 U.S.C. §§ 206(a)(1), 207(a)(1). An "employee" is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and a qualifying "employer" includes an "enterprise[ ] engaged in commerce or the production of goods for commerce," [2] 29 U.S.C. § 203(r)–(s). Notably, independent contractors are not entitled to the FLSA's protections because they do not fall under the "employee" definition. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)). Courts typically apply a multifactor "economic realities" test to determine whether an individual is an employee or an independent contractor, but the "overarching focus" is "economic dependence"—whether the individual is "in business for himself" or "dependent upon finding employment in the business of others." *Scantland*, 721 F.3d at 1311–12 (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301–02 (5th Cir. 1975)). With this background in mind, the Court additionally notes that the Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches

---

[2] An "[e]nterprise engaged in commerce or in the production of goods for commerce" is an "enterprise" that "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . ." 29 U.S.C. § 203(s)(1)(A). An "[e]nterprise" is "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." *Id.* § 203(r)(1).

consistent with congressional direction." *Alamo Found.*, 471 U.S. at 296 (citing *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959)).

The Defendants move to dismiss Count I of the Amended Complaint, which alleges FLSA violations for the supposed misclassification of Elliott as an independent contractor and unpaid overtime wages. The Defendants contend that "mere misclassification" as an independent contractor is not a cause of action under the FLSA and point out that Elliott does not cite any law suggesting it is. (Br. in Supp. of Defs.' Mot. to Dismiss, at 6–7; Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 4–5 [Doc. 19]). In response, Elliott reasserts that the Defendants' act of "misclassification" was "in direct violation of the Fair Labor Standards Act" and caused him to "incur damages." (Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 2–3 [Doc. 16]). According to Elliott, the damages include (1) "Defendants' failure to pay withholding taxes to the federal and state taxing authorities" and (2) unpaid overtime wages from the Defendants "fail[ure] to pay Plaintiff for all hours worked." (*Id.* at 3). On this first point, the Defendants suggest that no damages accrued at all: "Plaintiff does not allege that Defendant[s] improperly absconded with the money that should have been used for payroll taxes. Plaintiff apparently concedes that he received all monies that should have been used for payroll taxes." (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 4). On the second point regarding unpaid overtime, the Defendants argue that Elliott's overtime allegations are

"conclusory and not sufficiently specific[ ] and should be dismissed . . . as simply not meeting sufficient pleading standards." (*Id.* at 5).

The Court agrees with the Defendants that "mere misclassification" is not an FLSA cause of action on its own. However, employees who are misclassified as independent contractors are entitled to bring claims for rights owed to them as employees but denied by their employers. *See Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 662, 664 (7th Cir. 2022); *Sims v. UNATION, LLC*, 292 F. Supp. 3d 1286, 1290–92 (M.D. Fla. 2018) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)). In other words, if a plaintiff is an employee and does not receive the full benefit of that status under the FLSA (i.e., unpaid minimum or overtime wages), the plaintiff has a cause of action—*regardless of whether the employer labels the plaintiff an independent contractor or supplies a Form 1099. Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 ("The Supreme Court has recognized [ ] that businesses are liable to workers for overtime wages even if the company 'put[s] . . . an "independent contractor" label' on a worker whose duties 'follow[ ] the usual path of an employee.'" (first alteration added and subsequent alterations in original) (quoting *Rutherford*, 331 U.S. at 729). To the extent Elliott attempts to present a cause of action for "mere misclassification" (i.e., misclassification not tied to allegations that the Defendants violated the FLSA's overtime pay protections or another express

provision in the statute), the Court does not recognize such an action as proper. Elliott's allegations that the Defendants merely issued a Form 1099 instead of a W-2 and paid payroll tax payments directly to Elliott rather than the tax authorities, thus, do not amount to a cause of action on their own.

Rather, to state a viable cause of action, plaintiffs believing their employer misclassified them as independent contractors must show the following: (1) they qualify as "employees" as defined by the FLSA, (2) their employer is a qualifying "enterprise," and (3) their employer "failed to compensate [them] for the hours worked." *Sims*, 292 F. Supp. 3d at 1290–92; *see also Brant*, 42 F.4th at 662, 664 (stating similarly that a plaintiff who believed his employer misclassified him as an independent contract "must allege facts giving rise to a plausible inference that he was an employee within the meaning of the Act and that he was underpaid for at least one workweek" in order to "state a claim for violation of the FLSA's [ ] wage provisions"); *Sebren v. Harrison*, 552 F. Supp. 3d 249, 255, 259–60 (D.R.I. 2021) (involving a plaintiff alleging that her misclassification violated the FLSA because the employer did not pay all wages owed); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 321 (S.D.N.Y. 2001) (same regarding unpaid overtime).

Elliott has plausibly pleaded all three of these requirements and thus maintains a viable cause of action under the FLSA. The Court addresses the "employee" requirement first and finds that the Amended Complaint

sufficiently alleges that Elliott was an employee rather than an independent contractor under the "economic realities" test. The factors are as follows: (a) "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed"; (b) "the alleged employee's opportunity for profit or loss depending upon his managerial skill"; (c) "the alleged employee's investment in equipment or materials required for his task, or his employment of workers"; (d) "whether the service rendered requires a special skill"; (e) "the degree of permanency and duration of the working relationship"; and (f) "the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland*, 721 F.3d at 1311. Viewing the facts in the light most favorable to the Plaintiff, factors (a)–(c) and (e)–(f) point toward Elliott's status as an employee. According to the Amended Complaint, Elliott merely agreed to "provid[e] plumbing services" in exchange for fixed payments from the Defendants, (Am. Compl. ¶ 54), supposedly without an additional layer of responsibility or ability to determine his rates or profit from the work performed, see *Scantland*, 721 F.3d at 1313 ("Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity" (citation omitted)); *id.* at 1316 (finding that the ability to "profit" from managerial skill is distinct from "profit" through "overtime pay" from "complet[ing] more jobs"). Elliott does not allege any information regarding investments in any

equipment, but it appears that he did not separately employ any other workers to fulfill his employment agreement. Although plumbing requires "special skill[s]" amenable to an independent contractor, the fact that Elliott worked for Bison and Bison Services over multiple years and with overtime, (Am. Compl. ¶¶ 28, 31, 39), suggests a degree of "permanency" and "exclusivity" to Elliott's employment regarding Bison and Bison Services, see Scantland, 721 F.3d at 1318–19. Moreover, Elliott was informed he was an "employee" at the start of his employment in 2019 as well as in 2020, and he received a W-2 for his 2019 and 2021 earnings. (Am. Compl. ¶¶ 29–30). Lastly, the Court infers from the companies' names that plumbing services are an "integral part" of Bison Plumbing Services, Inc. and Bison Plumbing, Inc. and, thus, something that these companies are less likely to outsource. See Scantland, 721 F.3d at 1319.

Regarding the second and third requirements for sustaining an FLSA cause of action, the Amended Complaint satisfies both. The Amended Complaint clearly alleges sufficient facts in paragraphs fifteen through twenty-one regarding the status of Bison and Bison Services as "enterprises engaged in commerce or the production of goods for commerce" under 29 U.S.C. § 203(r)–(s). And, for the second requirement, it alleges that Elliott "routinely worked more than forty (40) hours per week" in 2020 and 2021, yet he did not receive the "required overtime wages." (Am. Compl. ¶ 39). It alleges the

Defendants "maintain" the relevant "time and pay records" for Elliott's employment. (*Id.* ¶ 27). These statements—though lacking much in specificity—are sufficient to show the Defendants plausibly "failed to compensate" Elliott for the hours he worked as an employee. Therefore, Elliott has pointed to a permissible cause of action under the FLSA.

### 2. Statute of Limitations

Notwithstanding the fact that Elliott has pleaded a cause of action under the FLSA, his claim is time barred. The FLSA has a two-year statute of limitations for non-willful violations and a three-year statute of limitations for willful violations. 29 U.S.C. § 255(a). The statute of limitations runs from the date on which the cause of action accrued, and a cause of action under the FLSA typically "accrues on each payday that follows a period for which the employee is underpaid." *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1335 (11th Cir. 2023) (citing *Knight v. Columbus*, 19 F.3d 579, 581 (11th Cir. 1994)). A willful FLSA violation occurs if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Neither negligence, nor even unreasonable conduct, is sufficient to prove willfulness." *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902–03 (11th Cir. 2012) (citation omitted).

Elliott states that the Defendants willfully misclassified him and

willfully failed to pay overtime. (Am. Compl. ¶¶ 2, 36, 39–40, 49). These statements on their own are merely conclusory without more. While Elliott attempts to provide additional facts to show that the Defendants willfully misclassified him, (*id.* ¶ 33–34), he does not provide any facts to describe the way in which the Defendants willfully failed to pay overtime. And, as explained above, what matters is whether the Defendants acted willfully with respect to not paying Elliott any required overtime pay. Elliott does not allege any facts that the Defendants "knew" about or "showed reckless disregard for" the unpaid overtime. Therefore, the Court dismisses Count I under the two-year statute of limitations for non-willful violations because Elliott's last paycheck was issued in 2021, more than two years prior to the filing of the Initial Complaint in 2024. *See* 29 U.S.C. § 255(a).

### B. Punitive Damages Claim (Count III)

The Court hereby dismisses the punitive damages claim under Count III. Although the Amended Complaint does not specify, the Court assumes that it had sought punitive damages under both its state law and FLSA claims. However, the Defendants correctly state that Elliott cannot recover punitive damages for breach of contract (Count II) because "punitive damages are not recoverable in breach of contract actions" under Georgia law. (Br. in Supp. of Defs.' Mot. to Dismiss, at 14 (quoting *Hernandez v. Rutco, LLC*, 720 F. Supp. 3d 1343, 1348 (N.D. Ga. 2024))). And they correctly state that

Elliott cannot recover putative damages as a stand-alone claim if the FLSA claim (Count I) is dismissed. *Edelen v. Campbell Soup Co.*, 2008 WL 11324064, at *15 (N.D. Ga. 2008) ("[A] '[p]laintiff may not maintain stand-alone causes of action for punitive damages and attorneys' fees, as both are remedies rather than independent causes of action.'" (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1087 n.10, 1093 n.34 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008))). Elliott did not respond to these arguments in briefing. Having dismissed the FLSA claim as time-barred, the Court finds that the punitive damages claim necessarily fails and thus grants the Defendants' motion to dismiss Count II.

### C. Remaining State Law Claims (Counts II & IV)

#### 1. Defendants Bison, Tadlock, and Edwards

The Defendants seek dismissal of Bison, Tadlock, and Edwards as improper defendants as to all counts. (Br. in Supp. of Defs.' Mot. to Dismiss, at 10). Because the Court dismisses Counts I and II, it turns now to whether Bison, Tadlock, and Edwards are proper defendants regarding the breach of contract (Count II) and attorney's fees (Count IV) claims. The Defendants contend that Bison should be dismissed because Elliott entered into an employment contract only with Bison Services, not Bison, and has not alleged any conduct or activities related specifically to Bison—at least not beyond statements that vaguely refer to multiple or all Defendants at once. (*Id.* at 12).

They additionally contend that Tadlock and Edwards should be dismissed because Elliott does not allege sufficient facts regarding their specific conduct. (*Id.* at 10–11).

Regarding Elliott's remaining claims, the Court agrees that Bison, Edwards, and Tadlock should be dismissed. Elliott ignores the Defendants' arguments altogether in his response brief. The Court thus deems his claims regarding those Defendants abandoned, *see Wambua v. Wolf*, 2021 WL 9386032, at *1 (N.D. Ga. 2021), and grants dismissal of those Defendants on all remaining counts (Counts II and IV).

### 2. Defendant Bison Services

Elliott's only remaining claims are the state law claims against Defendant Bison Services for breach of contract (Count II) and attorney's fees (Count IV). As the Defendants point out, the Court has discretion under 28 U.S.C. § 1367(c)(3) to decline supplemental jurisdiction over these claims because the FLSA claim has been dismissed. *See United Mine Workers of Am v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging the dismissal of state law claims "if the federal claims are dismissed before trial"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999))). Courts should consider "judicial economy, convenience, fairness to

the parties, and whether all the claims would be expected to be tried together" in declining to exercise supplemental jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (citing *Gibbs*, 383 U.S. at 725–26). After considering these factors, the Court sees no reason to continue exercising supplemental jurisdiction of the pendant claims against Bison Services. Therefore, Counts II and IV will be dismissed without prejudice as to Defendant Bison Services.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss the Initial Complaint [Doc. 10] is DENIED as moot, and the Defendants' Motion to Dismiss the Amended Complaint [Doc. 13] is GRANTED in its entirety as to Counts I and II and GRANTED as to Counts II and IV only as to Defendants Bison, Tadlock, and Edwards. The Court additionally dismisses without prejudice the remaining counts (Counts II and IV) against Defendant Bison Services. The Clerk is DIRECTED to enter judgment accordingly and to close the case.

SO ORDERED, this   14th   day of November, 2024.

THOMAS W. THRASH, JR.
United States District Judge